**IN THE UNITED STATES DISTRICT COURT FOR**
**THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **SARAH STEELE**<br>*Plaintiff,*<br>v.<br>**VESTWELL HOLDINGS, INC.**<br>*Defendant.* | CIVIL ACTION NO. 26-4664 |

**PLAINTIFF SARAH STEELE'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION AND STAY PLAINTIFF'S COMPLAINT**

Respectfully submitted,

**CONSOLE MATTIACCI LAW LLC**

Dated: 10/12/2026

BY: */s/ Rahul Munshi*
Rahul Munshi, Esquire
1525 Locust Street, Floor 9
Philadelphia, PA 19102
215-545-7676

*Attorneys for Plaintiff*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .......... ii

I. INTRODUCTION .......... 1

II. FACTUAL BACKGROUND .......... 3

III. LEGAL STANDARD .......... 6

IV. ARGUMENT .......... 7

A. The Arbitration Clause Applies Only to Disputes Relating to the Agreement, Not Every Dispute Relating to Plaintiff's Employment .......... 7

B. DiIulio and Yevak Support Denial of the Motion .......... 9

C. Defendant's Authorities Do Not Eliminate the Scope Limitation in Section 22 .......... 11

V. CONCLUSION .......... 13

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*AT&T Techs. v. Communs. Workers of Am.*,
475 U.S. 643 (1986) ....................7

*Century Indem. Co. v. Certain Underwriters at Lloyd's*,
584 F.3d 513 (2009) ....................6,7

*Flynn v. eKidz Care, Inc.*,
No. 18-5282, 2019 U.S. Dist. LEXIS 134237 (E.D. Pa. 2019) ....................12

*Gilmer v. Interstate/Johnson Lane Corp.*,
500 U.S. 20 (1991) ....................11

*Noble v. Samsung Elecs. Am., Inc.*,
682 Fed.Appx. 113 (3d Cir. 2017) ....................6

*Reading Health Sys. v. Bear Stearns & Co.*,
900 F.3d 87 (3d Cir. 2018) ....................7

*Yevak v. Nilfisk-Advance, Inc.*,
No. 15-5709, 2016 U.S. Dist. LEXIS 16720 (E.D. Pa. Feb. 11, 2016) ....................3, 10, 11

**Statutes**

9 U.S.C. § 2 (2022) ....................6

9 U.S.C. § 4 ....................6

IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **SARAH STEELE**<br>*Plaintiff,*<br>v.<br>**VESTWELL HOLDINGS, INC.**<br>*Defendant.* | CIVIL ACTION NO. 26-4664 |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION AND STAY PLAINTIFF'S COMPLAINT**

## I. INTRODUCTION

Defendant Vestwell Holdings, Inc. moves to compel Plaintiff Sarah Steele[1] to submit her claims to mandatory binding arbitration before the AAA in New York and to stay this action pursuant to Section 22 of the Employment Agreement. Section 22 provides:

> Each party waives the right to trial by jury in any action or proceeding **based upon, arising out of, or in any way relating to this Agreement**, whether sounding in contract or tort or otherwise. All disputes shall be submitted to mediation to be held in New York, New York with each party participating in good faith in the mediation and paying each of their own costs and expenses. If the mediation does not result in a settlement of any dispute, then the parties agree to submit the dispute to binding arbitration, before the American Arbitration Association ('AAA'), with an arbitration to be held in New York, New York and decided in accordance with the AAA Commercial Arbitration Rules.

See Exhibit A at p.7 (emphasis added).

Defendant's Motion should be denied because Plaintiff's statutory discrimination and retaliation claims do not fall within the limited scope of the arbitration clause on which Defendant

[1] Plaintiff was formerly known as Sarah Riefenstahl.

relies. Defendant asks this Court to treat the parties' Employment Agreement as if it required arbitration of ***every*** dispute arising from Plaintiff's employment or termination. It does not. The Agreement states that each party waives a jury trial in an action or proceeding "based upon, arising out of, or in any way relating to this Agreement," and then provides that such disputes proceed first to mediation and then, if necessary, arbitration. The arbitration provision is tied to actions or proceedings based upon, arising out of, or in any way relating to "this Agreement," not to ***all*** disputes arising out of Plaintiff's employment, termination, statutory rights, discrimination, retaliation, medical leave, or protected activity. Defendant could have drafted a broader arbitration clause. It did not.

Defendant's Motion replaces the language the parties used (disputes relating to "this Agreement") with materially broader language they did not use (disputes relating to Steele's "employment"). Defendant characterizes the provision as requiring arbitration of all disputes relating to Plaintiff's employment, but the actual clause is tied only to actions or proceedings based upon, arising out of, or relating to "this Agreement." The Federal Arbitration Act ("FAA") enforces arbitration agreements according to their terms; it does not enlarge those terms to reach disputes the parties did not agree to arbitrate.

Plaintiff's Complaint does not seek to enforce the Agreement, avoid the Agreement, interpret the Agreement, obtain benefits promised by the Agreement, or challenge any contractual obligation imposed by the Agreement. Plaintiff alleges that Defendant discriminated against her based on sex, disability, and age, retaliated against her for protected activity and for exercising FMLA rights, failed to engage in the interactive process, subjected her to a hostile work environment, and terminated her employment for false and pretextual reasons in violation of Title VII, the Americans with Disabilities Act ("ADA"), the Age Discrimination in Employment Act

("ADEA"), the Family and Medical Leave Act ("FMLA"), and the Pennsylvania Human Relations Act ("PHRA"). These claims arise from independent statutory duties, ***not*** from the Agreement.

Judge Diamond of this Court recently issued an Order rejecting the same type of overbroad argument made here by Defendant in DiIulio v. Abbott Laboratories, holding that statutory discrimination claims may relate to employment ***without*** arising out of or relating to an employment agreement. See Exhibit B. As explained below, DiIulio held that the plaintiff's discrimination claims related to his employment, but that employment is not the same thing as an employment agreement, and that the agreement's forum-selection clause there did not govern the statutory claims. In so doing, Judge Diamond relied on Yevak v. Nilfisk-Advance, Inc., No. 15-5709, 2016 U.S. Dist. LEXIS 16720, at *8 (E.D. Pa. Feb. 11, 2016), where Judge Leeson of this Court likewise held that "[t]he lawsuit does relate to Plaintiff's employment, but Plaintiff's employment is not the same thing as Plaintiff's employment agreement." That reasoning applies here. Accordingly, Defendant's Motion should be denied.

## II. FACTUAL BACKGROUND

Plaintiff Sarah Steele was hired by Defendant Vestwell Holdings, Inc. on or about February 1, 2022, and she last held the position of Vice President, Relationship Manager. (Compl. ¶¶ 22, 24-25.) Prior to July 2023, Steele reported to Douglas Magnolia, Chief Customer Officer and President; in July 2023, Defendant demoted Steele from an organizational perspective and had her begin reporting to Stephen Jobe, Senior Vice President. (Compl. ¶¶ 26-30.) Steele was the only female employee and the oldest employee directly reporting to Jobe. (Compl. ¶¶ 31-32.)

Steele consistently performed her job duties in a highly competent manner, received positive feedback, and she had no performance or disciplinary issues throughout her employment. (Compl. ¶¶ 33-34.) However, Defendant treated her differently and worse, and in a more hostile

and dismissive manner, than male employees. (Compl. ¶ 35.) In August 2023, Defendant hired David Bell, a male employee, into a newly created Vice President position reporting to Jobe; thereafter, certain of Steele's job duties and responsibilities were removed from her and assigned to Bell. (Compl. ¶¶ 36-37.) Steele was excluded from conferences, documents, meetings, communications, discussions, and decisions related to her job duties and responsibilities, while male employees, including Bell, were included. (Compl. ¶¶ 38-44.)

In February 2024, Steele complained to Magnolia and Jobe of sex discrimination, including that she had been excluded from meetings, decisions, communications, and discussions related to her job duties and that she had not been included in a golf outing. (Compl. ¶ 44.) Magnolia responded that Steele's exclusion from meetings was an "oversight," and Jobe admitted that it was likely "gender stereotypes" at play when Steele was not invited to the golf outing. (Compl. ¶¶ 45-46.) Defendant failed to investigate her sex-discrimination complaint and failed to remedy or prevent the discrimination and retaliation to which she was subjected. (Compl. ¶¶ 47-48.)

Also in February 2024, Defendant announced a new leadership committee that included fourteen male employees and two female employees. (Compl. ¶¶ 49-50.) In April 2024, Bell organized a meeting in which Steele was not invited to speak and excluded Steele from a separate meeting at which she was supposed to be present. (Compl. ¶ 51.) On June 18, 2024, Magnolia stated that it would be a good time to transition Steele out of Defendant. (Compl. ¶ 52.)

On August 29, 2024, Defendant offered Steele what it called a "retirement" severance package to leave Defendant in exchange for a release of all claims and confidentiality. (Compl. ¶ 53.) Steele understood Defendant's reference to "retirement" as age biased and understood that Defendant wanted her to leave because of her sex, age, and/or protected activity. (Compl. ¶¶ 54-

55.) Steele refused to accept the retirement severance package and elected to remain employed. (Compl. ¶ 56.)

On September 3, 2024, Steele went out of work on a medical leave of absence due to the discriminatory and retaliatory hostile work environment to which she was being subjected. (Compl. ¶ 57.) Steele was diagnosed with anxiety disorder and depression. (Compl. ¶ 58.) That same day, Steele emailed Jobe that she had been written out of work on medical leave and would work with her medical provider to submit required information. (Compl. ¶ 59.) Jobe responded by text, asking whether Steele had "a sudden emergency medical issue" or whether the email was "code for 'I accepted Patty's offer.'" (Compl. ¶ 60.) Steele understood Jobe's message as doubting that she had a genuine medical condition and as pressuring her to resign and release all claims. (Compl. ¶ 61.)

On September 10, 2024, Patty Kim, Defendant's Chief People Officer, sent Steele a text message stating that she "saw that [Steele had] accepted [Defendant's] offer of retirement" and wanted to follow up on next steps. (Compl. ¶ 62.) Steele understood Kim's reference to "retirement" as age biased. (Compl. ¶ 63.) On September 11, 2024, Steele responded that she had not accepted any offer of retirement, was not retiring, was remaining employed, and was out of work on FMLA-protected medical leave. (Compl. ¶ 64.) Kim nevertheless responded that she thought Defendant was "moving forward with [Steele's] retirement plan," and Steele again reiterated that she had not accepted or agreed to any retirement plan, was not retiring, and was remaining employed. (Compl. ¶¶ 65-66.)

Steele remained out of work on medical leave from September 3, 2024, to December 4, 2024. (Compl. ¶ 67.) On November 26, 2024, Steele submitted her Return to Work Form and asked Human Resources for guidance regarding her December 4, 2024 return; she received no response.

(Compl. ¶¶ 68-69.) That same day, Steele emailed Kim, Magnolia, and Jobe that she looked forward to returning to work on December 4, 2024, and again received no response. (Compl. ¶¶ 70-71.) After Steele followed up on December 3, 2024, Kim confirmed Steele's return to work for December 4, 2024. (Compl. ¶¶ 72-73.)

Steele returned to work from medical leave on December 4, 2024. (Compl. ¶ 74.) In a December 4, 2024, phone call, Jobe asked why Steele had not accepted the package to leave; Steele responded that she was not interested in a package, was ready to return to work, and looked forward to remaining employed. (Compl. ¶ 76.) Jobe then stated that he did not want to give Steele any work and instructed her to pretend that she was a new employee and listen in on meetings. (Compl. ¶ 76.) On December 10, 2024, Defendant terminated Steele's employment, effective immediately, stating that her position was eliminated. (Compl. ¶ 77.) Steele was the only employee reporting to Jobe who was terminated on December 10, 2024. (Compl. ¶ 80.)

## III. LEGAL STANDARD

The FAA makes a written arbitration provision enforceable according to its terms. 9 U.S.C. § 2 (2022). It authorizes an order compelling arbitration only in the manner provided for in the parties' agreement. 9 U.S.C. § 4. Before compelling arbitration, a court must determine both that an agreement to arbitrate exists and that the dispute at issue falls within that agreement's scope. Century Indem. Co. v. Certain Underwriters at Lloyd's, 584 F.3d 513, 523 (2009). The party seeking to compel arbitration bears the burden of establishing those requirements. Noble v. Samsung Elecs. Am., Inc., 682 Fed.Appx. 113, 115 (3d Cir. 2017).

Arbitration rests on consent, not coercion. A party therefore cannot be compelled to arbitrate a dispute unless the party agreed to submit that specific dispute to arbitration. Century Indem. Co., 584 F.3d at 523 (explaining that "the parties might agree to the resolution of some but

less than all of their disputes arising out of a particular contract or relationship through arbitration"). Unless the parties clearly and unmistakably provide otherwise, whether they agreed to arbitrate a particular dispute is a question for the court. AT&T Techs. v. Communs. Workers of Am., 475 U.S. 643, 649 (1986).

The federal policy favoring arbitration does not eliminate this threshold inquiry or automatically require arbitration whenever one party demands it. Century Indem. Co., 584 F.3d at 523. Although doubts concerning the scope of an arbitration provision may be resolved in favor of arbitration, the presumption does not authorize a court to disregard the provision's actual language. Whether a contractual dispute-resolution provision applies depends on what the specific provision says, and comparisons to other cases are useful only when they involve the same or substantially similar language. Reading Health Sys. v. Bear Stearns & Co., 900 F.3d 87, 98 (3d Cir. 2018) (citing John Wyeth & Brother Ltd. v. Cigna Int'l Corp., 119 F.3d 1070 (1997)).

## IV. ARGUMENT

### A. The Arbitration Clause Applies Only to Disputes Relating to the Agreement, Not Every Dispute Relating to Plaintiff's Employment.

The threshold issue is not whether arbitration agreements can be enforceable generally. They can. The issue is whether this particular clause covers these particular claims. It does not. The first sentence of Section 22 defines the provision's substantive reach: an action or proceeding must be based upon, arising out of, or in any way relating to **"this Agreement."** The following sentences prescribe how disputes within that defined category are to be resolved, first through mediation and then through arbitration. Read in context, "[a]ll disputes" in the second sentence refers to all disputes encompassed by the preceding sentence, not every conceivable controversy between Steele and Vestwell.

Vestwell's contrary reading detaches "[a]ll disputes" from the sentence immediately preceding it and converts Paragraph 22 into an unrestricted arbitration mandate. If the parties intended arbitration of every claim arising from Steele's employment or termination, they could have said so. They did not. The phrase "relating to this Agreement" must retain operative meaning. If Defendant wanted to require arbitration of all employment-related statutory claims, it could have said so. It could have drafted a clause covering "all claims arising out of employment," "all claims arising out of termination," "all statutory discrimination and retaliation claims," or "all disputes between Employee and Company." It did not. Instead, it chose language tied to disputes concerning "this Agreement." Courts must give meaning to that limitation. Reading Section 22 to cover ***every*** claim that would not exist "but for" employment would erase the words "this Agreement" and replace them with "employment."

Defendant's own Motion illustrates the textual problem. Its introduction asserts that the Agreement requires arbitration of "all disputes relating to Plaintiff's employment." But when Defendant quotes Paragraph 22, the actual language is "based upon, arising out of, or in any way relating to this Agreement." The Court should apply the language in the contract, not Defendant's broader paraphrase.

Plaintiff's statutory discrimination and retaliation claims do not require interpretation or enforcement of the Agreement. Plaintiff's claims arise from Defendant's unlawful conduct, not from the Agreement. The Complaint alleges sex discrimination, disability discrimination, age discrimination, retaliation, failure to accommodate, failure to engage in the interactive process, hostile work environment, FMLA retaliation, and termination for pretextual reasons, which caused lost earnings, benefits, emotional distress, and other damages. Those claims will ***not*** require the Court to decide whether Plaintiff breached the Agreement, whether Defendant properly invoked a

contractual termination provision, whether any restrictive covenant was violated, whether any confidential information was misused, whether any intellectual-property obligation was triggered, or whether Plaintiff is owed a contractual severance payment. Plaintiff is not suing because Defendant breached the Agreement. She is suing because Defendant violated federal and state anti-discrimination and leave laws.

Defendant's contrary argument proves too much. Defendant contends that Plaintiff's claims relate to the Agreement because the Agreement concerns employment, duties, benefits, and termination, and because Plaintiff seeks damages for wages and benefits. Defendant argues that Plaintiff's claims concerning discriminatory treatment, retaliation, job responsibilities, leave, accommodations, benefits, and termination concern the same aspects of the parties' contractual relationship. But virtually every employment-discrimination case concerns employment, job duties, pay, benefits, and termination. If that were enough, any agreement containing basic employment terms could silently convert every statutory discrimination claim into an arbitrable contract-related dispute. That is not the language the parties used. The Agreement may provide background facts relevant to the employment relationship, but factual overlap is not enough. The question is not whether Steele had an employment agreement. The question is whether the parties agreed to arbitrate these statutory claims. Paragraph 22's limiting language shows they did not.

**B. DiIulio and Yevak Support Denial of the Motion.**

In DiIulio, Judge Diamond addressed materially similar language in an employment agreement's forum clause and rejected the employer's attempt to apply it to statutory discrimination claims. See Exhibit B. The DiIulio employment agreement applied to "any action or proceeding arising out of or relating to this Agreement or the transactions contemplated hereby." Thus, defendant similarly argued that disputes pertaining to plaintiff's termination of employment

triggered the forum selection clause contained in the agreement. Judge Diamond, however, held that the plaintiff's age-discrimination claims did ***not*** fall within that language. The court held that DiIulio's age-discrimination claims did not arise out of the contractual relation or implicate the contract's terms because Abbott did not contend DiIulio breached the agreement and the statutory claims were ***not*** rooted in the same facts as a parallel contractual claim. Judge Diamond explained the critical distinction: although DiIulio's statutory discrimination claims related to his employment generally, they did not arise out of or relate to the employment agreement, because **employment is not the same thing as an employment agreement**. That distinction controls here. Steele's claims, like DiIulio's, relate to her employment. They do not arise out of or relate to the Employment Agreement.

Judge Leeson's decision in Yevak is also on point because it rejects the same move Vestwell makes here: treating a clause limited to disputes relating to "this Agreement" as if it covered ***every*** dispute relating to employment. In Yevak, the plaintiff brought ADA, FMLA, ADEA, and PHRA statutory claims alleging failure to accommodate, discrimination, retaliation, denial of promotion, and termination. 2016 U.S. Dist. LEXIS 16720 at *7. Defendants sought transfer based on an employment agreement's forum-selection clause after the plaintiff alleged these statutory claims.

The forum clause in Yevak applied to "any litigation in any way relating to this Agreement," ***not*** all employment-related disputes. Id. at *4. Judge Leeson held that "relates to" requires a logical or causal connection to the agreement, and he warned that the phrase cannot be stretched so far that it becomes meaningless. The court explained that litigation relates to an agreement only if it has some logical or causal connection to the agreement, while recognizing that "relates to" should not be stretched so broadly that everything becomes related to everything else.

Id. at **7-8. Applying that rule, the court denied transfer because the agreement protected, for example, confidential information, business relationships, competitive advantage, noncompetition obligations, nonsolicitation obligations, and intellectual property, while the lawsuit had "nothing to do with any of these matters." Id. at *8. Most importantly, Judge Leeson drew the distinction that controls here: "The lawsuit does relate to Plaintiff's employment, but Plaintiff's employment is not the same thing as Plaintiff's employment agreement." Id.

Here, Steele's claims likewise concern sex, disability, and age discrimination, retaliation, FMLA-protected leave, a hostile work environment, and termination, ***not*** enforcement or breach of any term in the Employment Agreement. Steele asserts statutory claims under Title VII, the ADA, the ADEA, the FMLA, and the PHRA based on alleged discrimination and retaliation, ***not*** contract claims under the Employment Agreement. And like the defendant in Yevak, Vestwell asks the Court to rewrite "this Agreement" into "employment." That is not the parties' language: Paragraph 22 only covers disputes based upon, arising out of, or relating to "this Agreement," while Vestwell argues as if it covered ***all*** disputes relating to Steele's employment. Under Yevak and DiIulio, that is insufficient to compel arbitration.

**C. Defendant's Authorities Do Not Eliminate the Scope Limitation in Section 22.**

Defendant cites general arbitration authorities for the proposition that arbitration agreements are favored and broadly enforced. See, e.g., Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 25 (1991). Defendant relies on FAA principles, including the policy favoring arbitration and the rule that doubts concerning the scope of arbitrable issues are resolved in favor of arbitration. But those principles do not allow a court to compel arbitration of claims the parties did not agree to arbitrate. The scope inquiry still begins with the parties' actual language. Defendant's cited authorities do not change the wording of Section 22. The clause does not say

"all disputes arising out of employment." It says disputes "based upon, arising out of, or in any way relating to this Agreement." The parties agreed to arbitrate only the disputes tied to "this Agreement."

Defendant relies on Flynn v. eKidz Care, Inc., No. 18-5282, 2019 U.S. Dist. LEXIS 134237 (E.D. Pa. 2019), another forum selection clause case authored by Judge Leeson. Flynn did not hold that every employment discrimination claim necessarily relates to every employment agreement. Rather, Judge Leeson focused on the specific agreement before him. The Flynn agreement offered the plaintiff employment, stated that his employment was subject to listed "terms and conditions," and included provisions governing job duties and termination. The forum clause applied to "any proceeding to enforce rights hereunder in any court located in Allegheny County, Pennsylvania." Id. at *7. The plaintiff in Flynn sought to "enforce his rights" under the terms and conditions of his employment, which is why Judge Leeson found that the forum selection clause was triggered. In other words, the scope of the forum selection clause in Flynn specifically contemplated a potential subsequent action based on the plaintiff's attempt to enforce his statutory rights, i.e., an employment discrimination claim arising from the termination of his employment.

That is not the case here. Paragraph 22 does not apply to proceedings "to enforce rights hereunder," as in Flynn. And Steele is not seeking to enforce any right "based upon, arising out of, or in any way relating to this Agreement, whether sounding in contract or tort or otherwise." She is not claiming that Vestwell breached the Agreement, failed to pay contractual compensation, violated a severance promise, misapplied a termination provision, or sought to enforce any contractual benefit. She is enforcing independent statutory rights under Title VII, ADA, ADEA, FMLA, and the PHRA. Accordingly, Flynn does not support Defendant's position unless the

Court rewrites "relating to this Agreement" to mean "relating to employment," which is precisely what Yevak forbids.

## V. CONCLUSION

Plaintiff's claims arise from Defendant's alleged violations of federal and state anti-discrimination and leave laws. They do not arise from, depend on, or require interpretation of the Employment Agreement. The Agreement's arbitration clause is limited to disputes based upon, arising out of, or relating to the Agreement, and Defendant cannot rewrite that limitation into a sweeping employment-arbitration clause. For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendant's Motion to Compel Arbitration and Stay Plaintiff's Complaint.

Respectfully submitted,

**CONSOLE MATTIACCI LAW LLC**

Dated: 10/12/2026

BY: */s/ Rahul Munshi*
Rahul Munshi, Esquire
1525 Locust Street, Floor 9
Philadelphia, PA 19102
215-545-7676

*Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that, on October 12, 2026, the foregoing Plaintiff's Response in Opposition to Defendant's Motion to Compel Arbitration and Stay Plaintiff's Complaint was electronically filed, via ECF, and is available for viewing and downloading to all counsel of record.

Respectfully submitted,

**CONSOLE MATTIACCI LAW LLC**

BY: *Rahul Munshi*

Rahul Munshi, Esquire
1525 Locust Street, Floor 9
Philadelphia, PA 19102
215-545-7676

*Attorneys for Plaintiff*